**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

DETRICK DESHAWN CROSTON
ADC #131172                                                                                              PLAINTIFF

v.                                            4:12CV00168-JMM-JJV

KARL BYRD, Sheriff,
Faulkner County; *et al.*                                                                   DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

    1.    Why the record made before the Magistrate Judge is inadequate.

    2.    Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

    3.    The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

Mr. Croston is an inmate in the Varner Unit of the Arkansas Department of Correction (ADC). He filed a *pro se* Complaint (Doc. No. 2) pursuant to 42 U.S.C. § 1983. He asserts that while he was incarcerated at the Faulkner County Detention Center (FCDC), Defendants violated his Eighth Amendment rights when they placed him in a transport van without seatbelts and he was injured when the driver made an abrupt turn. He also asserts that Defendants were deliberately indifferent to the injuries he sustained in the van and by subjecting him to extremely cold temperatures in FCDC.

Defendants filed a Motion for Summary Judgment and Mr. Croston responded. (Doc. Nos. 53, 59.) After careful review, the Court finds that there are no genuine issues for trial and the Motion should be GRANTED.

**I.     SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S.

317, 321 (1986); *Janis v. Bresheuvel*, 428 F.3d 795, 798-99 (8th Cir. 2005). Although the evidence is viewed in a light most favorable to the nonmoving party, *Nooner v. Norris*, 594 F.3d 592, 600 (8th Cir. 2010), the nonmoving party has the burden of going beyond the pleadings and by affidavit or otherwise, producing specific facts that show that there is a genuine issue for trial. *Janis*, 428 F.3d at 799. A genuine issue of fact exists if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material when it might affect the outcome of the case. *Rakes v. Life Investors Ins. Co. of Am.*, 582 F.3d 886, 894 (8th Cir. 2009).

## II.     UNDISPUTED FACTS

From November 29, 2011, to December 8, 2011, Mr. Croston was transferred to the FCDC so he could attend a court hearing. (Doc. No. 55-3 ¶ 3.) On November 30, 2011, Plaintiff was shackled and chained, and placed in the FCDC transport van with other inmates. (Doc. No. 2 at 5.) The van did not have seatbelts for the inmates. (*Id*.) The driver, Officer Corbit-Critter, made a "sharp and quick turn" which propelled Mr. Croston from his seat to the opposite side of the van. (*Id.* at 5-6.) His head struck a bench and his shoulder hit the van floor, causing pain on impact. (*Id.* at 6.) Plaintiff shouted to Corbit-Critter, "You need to watch what the hell you're doing," but she "never attempted to even look to see if Plaintiff was alright nor asked if he was okay." (*Id*.)

After his court appearance, Mr. Croston started experiencing even more pain in his lower back and neck. (Doc. No. 2 at 6). A knot had formed on the right side of his head. *(Id.)* A couple of hours after returning to the FCDC, he asked Officer Flemmons if he could see the nurse. (*Id*.) According to Mr. Croston, Officer Flemmons stated, "I ain't gone call the nurse because I already know what she gone say and that's put in a medical grievance or regular grievance." (*Id*.) She then gave Mr. Croston a medical grievance form. *(Id.)* Mr. Croston returned the completed form but she refused to notify the nurse that he had a medical complaint. *(Id.)*

After submitting his medical grievance, Mr. Croston was moved to FCDC Unit 1. (Doc. No. 2 at 7.) When he failed to receive acknowledgment of his medical issues by December 2, 2011, Mr. Croston submitted a second grievance to Corporal Staley. (*Id*.) He asked Corporal Staley when he would receive an acknowledgment of the issues in his grievance; Corporal Staley replied, "[W]e got [ten] days to respond[.]" (*Id*.) Several days later when his pain had not subsided, Mr. Croston reported his medical issues to Corporal Chase. (Doc. No. 2 at 7). Corporal Chase advised Mr. Croston to submit another grievance and denied his request to see the nurse or notify the nurse of his medical issues. (*Id.*)

## III.   ANALYSIS

### A.   Official Capacity Claims

Mr. Croston sued Sheriff Byrd and Major Brown in their individual and official capacities. These defendants seek dismissal of Mr. Croston's official capacity claims. A suit against the defendants in their official capacity must be treated as a suit against the county. *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998). The county cannot be held vicariously liable for its employees. *Riehm v. Engelking*, 538 F.3d 952, 962 (8th Cir. 2008). To sustain official capacity claims against the defendants, plaintiff must prove that the county "*itself* caused the constitutional violation at issue." *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (quoting *Kentucky v. Graham*, 473 U.S. 159 (1985) (emphasis in original)). A municipality, such as the county, may be held liable under § 1983, if its customs or policies were the moving force behind the violation of the plaintiff's constitutional rights. *Rynders v. Williams*, 650 F.3d 1188, 1195 (8th Cir. 2011); *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 583 (8th Cir. 2006).

After careful review, the Court concludes that Mr. Croston does not allege a county policy or custom was the cause of the acts alleged. The Court also finds that Mr. Croston fails to establish

that the county, itself, caused the violation of his constitutional rights. Defendants are entitled to summary judgment as a matter of law on Mr. Croston's official capacity claims against Sheriff Byrd and Major Brown.

### B. Qualified Immunity

Defendants seek dismissal based on the doctrine of qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cnty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "*an immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[1] "Qualified immunity is appropriate only if no reasonable fact-finder could answer yes to both of these questions." *Nelson v. Corr. Med. Services*, 583 F.3d 522, 528 (8th Cir. 2009).

The United States Supreme Court precedent establishes:

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson*, 583 F.3d at 528 (quoting *Pearson*, 555 U.S. at 236).

> [T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Under the first prong of the Qualified Immunity analysis, the Court finds that Defendants did not violate Mr. Croston's constitutional rights. Therefore, as more fully explained below, Defendants are entitled to qualified immunity.

       1.      Failure to Provide Seat Belts

Mr. Croston asserts that Sheriff Byrd, Major Brown, and Officer Corbit-Critter violated his Eighth Amendment rights when they allowed him to be transported in a van without seatbelts. (Doc. No. 2, at p. 7). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Prison officials violate an inmate's Eighth Amendment rights when they intentionally place a prisoner in dangerous surroundings or when they are deliberately indifferent to either the prisoner's health or safety. *Fruit v. Norris*, 905 F.2d 1147, 1150 (8th Cir. 1990).

Deliberate indifference requires something more than negligence but less than actual intent to harm. It requires proof of a reckless disregard of the known risk. A prison official acts with deliberate indifference if he knows of and disregards a substantial risks to an inmate's safety. *Davis v. Oregon Cnty., Missouri*, 607 F.3d 543, 548 (8th Cir. 2010). There is both an objective component and a subjective component to a claim of deliberate indifference. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011); *Davis*, 607 F.3d at 548. The objective component questions whether a substantial risk to the inmate's safety existed. *Reynolds* at 979; *Davis* at 548. The subjective

component questions whether the official had knowledge of the substantial risk to the inmate's safety but nevertheless disregarded the risks. *Id.* "Regardless of whether the term is framed as a subjective or objective test, the alleged deprivation must still be 'sufficiently serious' and 'pose a substantial risk of serious harm.'" *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 906 (8th Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1970)).

Mr. Croston asserts that placing him in the vehicle without seatbelts violated his constitutional rights. But there is no requirement that jailers purchase transport vehicles with seatbelts. Furthermore, the transportation of inmates without seatbelts while handcuffed does not necessarily amount to a constitutional violation. *Spencer,* 183 F.3d at 906 (Board of Police Commissioner's purchase of patrol wagons without seatbelts and transporting pretrial detainees in such vehicles did not *per se* present a "substantial risk of serious harm). "The Board's decision to use patrol wagons without seatbelts was based on its concern that individuals transported in the wagon, even those who were handcuffed, could use the seatbelt as a weapon to harm an officer, other passengers being transported in the wagon, or even themselves. Such a policy is related to the legitimate penological goal of transporting individuals to police facilities without harm to officers or passengers." *Id.*

    2.  Reckless Driving

The United States Court of Appeals for the Eighth Circuit has held that the failure to provide a seatbelt to a prisoner, when one is available, coupled with reckless driving may constitute deliberate indifference to a prisoner's safety and health. *See Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008) (officers knowledge that inmate was shackled and restrained in a manner that prevented inmate from securing seatbelt coupled with officer's rejection of inmate's request for seatbelt and reckless driving, subjected the inmate to a substantial risk of serious harm); *Brown v.*

*Missouri Dep't of Corrs.*, 353 F.3d 1038, 1040 (8th Cir. 2004) (officers denied inmate's request to place him in his seatbelt then proceeded to drive in a reckless manner).

As an initial matter, seatbelts were not available. Thus, based on the holding in *Brown v. Fortner*, 518 F.3d at 558, Mr. Croston's claim fails on this basis alone. Moreover, Mr. Croston fails to show he was subjected to reckless driving. According to the Complaint, while en route to court, Officer Corbit-Critter made a "sharp and quick turn" that tossed Mr. Croston from his seat. (Doc. No. 2 at 5.) Corbit-Critter made only this one abrupt turn and there is no allegation she was driving in a reckless manner beyond this one event. So, at most, Officer Corbit-Critter's conduct was negligent and a claim of negligence is not actionable under § 1983. *See S.S. v. McMullen*, 225 F.3d 960, 964 (8th Cir. 2000). While Mr. Croston obviously believes that Officer Corbit-Critter's driving was reckless, his belief – without more – is simply insufficient. *See Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, 531 (8th Cir. 2008) (to establish a genuine issue of material fact the nonmoving party cannot rely on unsupported self-serving allegations). In the absence of any proof showing Officer Corbit-Critter drove in a reckless manner, the Court is unable to find that Mr. Croston was placed in a substantial risk of harm.

      3.     Respondeat Superior

Sheriff Byrd and Major Brown also cannot be held responsible under a theory of respondeat superior. *Royster v. Nichols*, 698 F.3d 681, 692 (8th Cir. 2012). "A supervisor may be held individually liable under § 1983 if he directly participates in the constitutional violation or if he failed to train or supervise the subordinate who caused the violation." *Brockington v. City of Sherwood, Arkansas*, 503 F.3d 667, 673 (8th Cir. 2007). Mr. Croston fails to offer any proof suggesting that either Sheriff Byrd or Major Brown were directly involved in the alleged violation or that they failed to adequately train or supervise a subordinate who caused the alleged

constitutional violation.

Thus the claims relating to the incident in the transport van should be dismissed. At most the incident was negligence and not a violation of Mr. Croston's constitutional rights.

**B.     Deliberate Indifference to Serious Medical Need**

Deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference includes intentional interference with prescribed treatment; inadvertent or negligent failure to provide adequate medical care cannot be said to constitute "unnecessary and wanton infliction of pain"). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir.1995). However, "[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

The United States Court of Appeals for the Eighth Circuit explains:

> Prison doctors and guards violate the Eighth Amendment when they act with 'deliberate indifference to [an inmate's] serious medical needs.' 'Deliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Likewise, an inmate's 'mere disagreement with the course of his medical treatment' fails to state a claim of deliberate indifference.

*Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (citations omitted).

To establish a claim of deliberate indifference to serious medical needs under § 1983, an inmate must demonstrate that he suffered from an objectively serious medical need and that the

defendants actually knew of but deliberately disregarded the need. *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id*. (quoting *Cameros v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)).

Mr. Croston asserts that Corporals Chase and Staley and Officer Flemmons were deliberately indifferent to his serious medical needs and denied him necessary medical treatment. (Doc. No. 2 at 6-9). Mr. Croston's failure to treat allegations, if true, are disturbing. Although he admits he did not have any obvious injuries, he had a right to be treated for complaints of back and head pain. There is no justification for refusing to offer treatment to an inmate who claims he is sick or injured.

However, the law also requires that Mr. Croston "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997). Mr. Croston offers no medical evidence to support his claims. While obviously there would be no medical evidence from the FCDC if they refused to treat him, he was returned to ADC eight days after the incident. ADC records show Mr. Croston was seen on December 15, 2011, for headaches. (Doc. No 55-2 at 6.) The nurse's evaluation revealed nothing abnormal. (*Id.*) On January 4, 2012, Mr. Croston was seen for back pain. (*Id.* at 7.) The nurse noted "subjective back pain without radiculopathy" and referred him to a doctor. (*Id.*) Ojiugo Miennaya Iko, M.D., evaluated Plaintiff on January 9, 2012. (*Id.* at 8.) Dr. Iko noted Plaintiff "ambulates without any difficulty, not in any distress. . . No tenderness along the spine, normal curvature, no muscular spasm observed [straight leg raise] was negative, normal hip flexion, abduction and adduction." (*Id.*) He further noted Plaintiff was able to "touch the floor without any difficulty, able to walk on his toes and heels with no discomfort. . . no leg edema, no knee swelling

bilaterally, no area of tenderness, no fluid, no crepitus, normal power both [lower legs]." (*Id.*) Plaintiff continued to seek treatment but the objective findings reveal no issues. (*Id.* at 9-11.) The medical evidence simply fails to support Plaintiff's claims. Although the Court finds this to be a close call, without any verifying medical evidence to show a detrimental effect from any delay in treatment, Mr. Croston fails to state a viable delay in treatment claim against Corporal Chase, Corporal Staley, and Officer Flemmons and these claims must be dismissed.

### C. Cruel and Unusual Punishment

In his Complaint, Mr. Croston alleges that while housed in Unit 1 of the FCDC, he was forced to live in extremely cold temperatures because the heat unit required repair. (Doc. No. 2 at 7.) Prisoners have a right to protection from extreme cold. *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). When assessing whether exposure to cold temperatures constitutes cruel and unusual punishment, the Court considers the severity of the cold, the duration, whether the inmate had alternatives to protect himself from the cold, the adequacy of the alternatives, as well as whether the inmate was forced to endure other uncomfortable conditions in conjunction with the cold. *Dixon*, 114 F.3d at 644; *Dace v. Smith-Vasquez*, 658 F. Supp. 2d 865, 876 (S.D. Ill. Sept. 8, 2009).

Mr. Croston states that from November 30, 2011, he "was forced to live in excessive and extremely cold temperatures due to the fact that the heating unit [had] gone out for a numerous amount of time and was not replaced or repaired until December 8, 2011." (Doc. No. 2 at 7.) Plaintiff's allegation fails to amount to a claim of cruel and unusual punishment. The Court does not doubt that the temperature in the jail was uncomfortable. Yet, the Complaint states that FCDC officials were trying to repair the heat unit and were successful on December 8, 2011. While serious, Mr. Croston would have only been subjected to a week and a half of cold. Importantly, he

does not allege there were any unusual weather conditions and he does not allege any other generally uncomfortable conditions combined with the cold. Therefore, the Court finds that Plaintiff fails to state an Eighth Amendment claim with respect to the temperature in his cell during his incarceration at FCDC.

**IV.  CONCLUSION**

1. Defendants' Motion for Summary Judgment (Doc. No. 53) should be GRANTED.

2. This cause of action should be DISMISSED with prejudice.

3. The Court should certify pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this recommendation and the accompanying Judgment would not be taken in good faith.

IT IS SO ORDERED this 30th day of July, 2013.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE